Catherine LAST, as Plenary Guardian
of the person of her natural son,
Douglas Last

v.

ELWYN, INC. d/b/a The Elwyn Institute,
and Thomas Gillem and Charles
Barnes.

Civil Action No. 96–1046.

United States District Court,
E.D. Pennsylvania.

July 29, 1996.

Gerald F. McCormick, Duane, Morris & Heckscher, Wayne, PA, for plaintiff Catherine Last, as Plenary Guardian of the Person and State of Her Natural Son, Douglas Last.

Walter M. Einhorn, Jr., Geoffrey A. Kahn, Arthur Makadon, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, Domenick C. DiCicco, Jr., Philadelphia, PA, for defendants Elwyn, Inc. d/b/a The Elwyn Institute, Thomas L. Gillem, Charles F. Barnes.

## MEMORANDUM

PADOVA, District Judge.

Plaintiff, Catherine Last, brings this personal injury action on behalf of her son and ward Douglas Last. Douglas is a 31-year-old adult who suffers from developmental and physical disabilities.[1] For the last 22 years Douglas has lived at the Elwyn Institute (the "Institute"), a residential school for the disabled located in Pennsylvania. It is undisputed that he is legally incompetent, and Catherine Last has been appointed his plenary guardian. Defendants are the nonprofit corporation that owns and runs the Institute, and several Institute employees. Jurisdiction is based on diversity.

Currently before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Defendants, all citizens of Pennsylvania, argue that there is not complete diversity among the parties.[2] For the reasons that follow, I conclude that diversity jurisdiction is proper. Defendants' Motion will therefore be denied.

## I. FACTUAL BACKGROUND

Briefly stated, Plaintiff alleges that on March 10, 1994, Douglas was walking from one building to another at the Institute. He was being "shadowed" by Defendant Barnes to make sure he got where he was going without incident[3]. While crossing a street, Douglas was struck by a van owned by Defendant Elwyn, Inc., and driven by Defendant Gillem. As a result of the accident, Douglas suffered severe back injuries that left him a paraplegic. Douglas suffers from other medical problems as a result of the accident including pain, and an inability to care for his own toileting. He has also incurred significant medical expenses and suffered emotional distress.

It is uncontested that Defendants are all citizens of Pennsylvania. The only jurisdictional question before the Court is whether Douglas is a citizen of New York, as Plaintiff contends, or a citizen of Pennsylvania, as Defendants contend. Plaintiff presents the following facts in support of her contention that Douglas is a citizen of New York.

Douglas was born in New York State on February 2, 1965 and has been developmentally disabled since birth, suffering from organic brain syndrome and microencephaly. Douglas lived in New York with his parents until 1974, when he was nine years-old. Prior to 1974, Douglas' education was provided by the New York State Bureau of Cooperative Educational Services ("BOCES"). When BOCES could no longer meet Douglas' needs, and finding no in-state facilities suitable, the State of New York Education Department agreed to pay for Douglas' placement at the Institute in Pennsylvania. The State of New York reviewed funding for this placement on a yearly basis. Until recently, Douglas traveled to his mother's home in New York on visits about five times a year.

In 1986, when Douglas attained the age of 21, the New York Education Department ceased funding for Douglas' placement at the Institute. Funding was then provided by the West Chester County (New York) Developmental Disabilities Services Office. This agency continued to provide funding until January 31, 1996. Douglas is currently on a waiting list for placement in an appropriate community-based living arrangement in the State of New York.

1. In addition to his developmental disabilities, Douglas is also deaf.

2. It is undisputed that the amount in controversy exceeds $50,000.

3. Douglas had a tendency to walk with his head down while watching his feet.

In support of their contention that Douglas is a citizen of Pennsylvania, Defendants note that it is undisputed that most of Douglas' social and educational life is centered at the Institute. In November 1994, Catherine Last was appointed Douglas' "plenary guardian" by the Pennsylvania Court of Common Pleas of Delaware County, Orphan's Court Division. Thus, a Pennsylvania State court has exercised jurisdiction over Douglas for purposes of appointing a guardian. Additionally, in December 1995, two months before this suit was filed,[4] Catherine Last purchased a home in West Chester, Pennsylvania. Since this time, Douglas has visited his mother at the Pennsylvania residence. Finally, Defendants note that the State of New York discontinued funding for Douglas' placement in Pennsylvania on January 31, 1996, just two weeks before the instant Complaint was filed.

Plaintiff counters that the purchase of the house in West Chester was made necessary by the injuries Douglas sustained in the accident underlying this case. Because of his new physical impairments, travel to New York is no longer practicable. Catherine Last claims that she is still a resident and citizen of New York, and that while she has spent considerable time in recent months making repairs to the Pennsylvania property, the new house will be used primarily for visits with Douglas and is not Ms. Last's primary residence.

Additionally, Plaintiff argues that the cessation of funding to the Institute is part of changing political conditions in New York State whereby various counties, including West Chester County, have declined to fund out-of-state care for retarded residents of New York. Out-of-state recipients of such care are to seek appropriate treatment in New York State. However, the United States District Court for the Eastern District of New York has ordered that funding be resumed for six months so affected persons and their families have an opportunity to arrange in-state care.

4. The Complaint was filed on June 20, 1996.

## II. STANDARD OF REVIEW

Where subject matter jurisdiction is challenged by means of a motion to dismiss under Rule 12(b)(1), the Plaintiff bears the burden of demonstrating that jurisdiction is proper. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

In diversity cases, the diversity of the parties is based on citizenship of the ward, not the guardian. The federal diversity statute, 28 U.S.C.A. § 1332(c)(2), states:

(c) For the purposes of this section and section 1441 [regarding removal] of this title—

\* \* \* \* \* \*

(2) the legal representative ... of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent.

The official commentary on § 1332(c)(2) provides added guidance:

[Section 1332(c)(2) ] directs that in a case involving the ... legal representative (guardian) of an infant or incompetent, the representative shall be deemed to have the ... ward's citizenship. The representative's own citizenship is not to count. This settles an issue that produced some conflict. . . .

In ward cases, the amendment appears to disregard distinctions based on the nature of the guardianship. Whether the representative is one appointed only for litigation (a guardian 'ad litem') or one of a more permanent nature, suit by or against that representative in behalf of the infant or incompetent requires the court to consider the citizenship of the ward, not the citizenship of the representative. That should apply regardless of the title or designation the representative may have under state law (e.g., committee [for an incompetent], conservator [for a conservatee], etc.).

28 U.S.C.A. § 1332(c)(2) (official comment).

## III. DISCUSSION

Citizenship for diversity purposes is synonymous with domicile. *See Juvelis by*

*Juvelis v. Snider*, 68 F.3d 648, 654 (3d Cir. 1995). Domicile is not the same as residence, and a person may reside in one place but be domiciled in another. *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 1608, 104 L.Ed.2d 29 (1989). Domicile consists of one's physical presence in a state and the intent to remain there. *Juvelis*, 68 F.3d at 654. While physical presence is easy to divine, subjective intent to remain is not. Persuasive evidence of intent to remain can include the establishment of a home, one's place of employment, the location of one's assets and registrations, and generally where one's social, civic, domestic, and business life are centered. *Id.* Motive is not determinative, although it may tend to show whether the individual intended to make a home. *Id.*

■ One acquires "domicile of origin" at birth, and that domicile continues until a new "domicile of choice" is acquired. *Holyfield*, 490 U.S. at 48, 109 S.Ct. at 1608. Minors, ordinarily being unable to form the necessary intent to establish a domicile, acquire the domicile of their parents. *Id.*

■ A person deemed legally incompetent is presumed to lack the capacity to change domiciles. *Juvelis*, 68 F.3d at 654. However, this presumption is not immutable. The burden of proof lies with the party seeking to establish a change of domicile. *Id.*

In *Juvelis*, the United States Court of Appeals for the Third Circuit addressed the question of whether an incompetent adult had established domicile in Pennsylvania for purposes of qualifying for benefits administered by the Pennsylvania Department of Public Welfare ("DPW"). *Id.* at 657. In that case, the parents of Niki (an incompetent adult) were United States citizens but resided in Venezuela. *Id.* at 651. They sent Niki to a special school in Pennsylvania at their own expense. After eighteen years in the Pennsylvania school, the cost of the placement went up sharply. Niki's parents sought financial assistance from the DPW. *Id.* The DPW declined the request, finding that Niki was not a citizen of Pennsylvania. The Third Circuit disagreed, finding that Niki was domiciled in Pennsylvania. *Id.* at 657.

The circumstances of *Juvelis* were different from the instant case in several respects. First, the *Juvelis* Court was not addressing the issue of domicile in the context of diversity jurisdiction, but rather the test to be applied by the DPW in determining domicile for purposes of qualifying for benefits. Additionally, the incompetent adult in that case sought to establish a new domicile in Pennsylvania. This contrasts with the instant case in which the incompetent adult seeks (through his guardian) to defeat the contention that his domicile has changed. Nevertheless, the *Juvelis* Court's analysis is instructive.

Courts have permitted incompetents to effect changes of domicile when they have demonstrated subjective attachment to a new home and when objective factors support the conclusion that the change would protect the best interests of the individual. Thus:

> The actual mental capacity required for selection of a domicil[e] of choice has been held to be much less than that required generally for the management of an individual's affairs, so that ability merely to have and express a preference with respect to the location of his home has been held sufficient to enable an incompetent to select his domicil[e].

Whether an incompetent may change his domicile depends on the extent to which his reason is impaired. A comparatively slight degree of understanding is required. It is sufficient if he understands the nature and effect of his act. It is in every case a question of fact whether a person who is mentally deficient or of unsound mind is able to choose a home. The crucial question is whether the person has sufficient mental capacity to choose a home. That he may be incapable of managing his own affairs is not conclusive; nor is the fact that he has been adjudged incompetent and a guardian appointed over his person or property. It has been recognized that, while a person may not be capable of doing some acts, ... yet he may have a sufficient degree of understanding to change his domicile.

*Id.* at 655 (internal quotations and citations omitted).

■ Where the incompetent individual is incapable of forming or expressing the intent necessary to establish a domicile, the *Juvelis* Court cited with approval those courts that look to a "mosaic of circumstances" to determine domicile. *Id.* Relevant circumstances include:

> the opinions of parents and guardians who are acting in good faith and in the best interest of the individual, as well as objective factors demonstrating the quality of the individual's attachment to his proposed domicile. The individual's motive in seeking to establish a new domicile, the duration of his relationship to the locale, abandonment of a prior residence, and the location of assets and friends have all been recognized as demonstrating attachment to the proposed domicile.

*Id.* at 655–56.

The *Juvelis* Court went on to examine whether Niki had established domicile in Pennsylvania.

> Niki must establish that he has in fact changed his residence from that of his parents. The Juvelises have pointed to several objective factors that support the conclusion that Niki has established a domicile in Pennsylvania; Niki has resided at Melmark [in Pennsylvania] for eighteen years, all of his friends and possessions are there, his parents have paid substantial fees to Delaware County home over those years, and it is expected that Niki will continue to reside in Pennsylvania for the rest of his life. Furthermore, within his limited ability to do so, Niki has expressed subjective attachment to Melmark. Finally, his parents are clearly acting in good faith and in Niki's best interest in asserting that Melmark is Niki's home. We conclude that Niki has made a sufficient showing to establish change of domicile to Pennsylvania.

*Id.* at 657.

■ Applying the standards outlined in *Juvelis,* I conclude that Douglas is a citizen of New York State. Douglas' domicile of origin is New York, and his domicile will remain New York until and unless Douglas acquires a domicile of choice. Because Douglas is incompetent, he is presumed incapable of changing his domicile.

Plaintiff presents evidence indicating that Douglas is deaf and functions at an intellectual level below that of a three year old. None of the parties suggest that Douglas has expressed a subjective preference, or is capable of doing so. I therefore conclude that Douglas is incapable of formulating and expressing the intent necessary to change his domicile from New York to Pennsylvania. Under these circumstances, I must look to the "mosaic of circumstances" surrounding this case to determine Douglas' domicile. Applying this test, I conclude that Douglas is domiciled in New York State.

Chief among the reasons supporting domicile in New York is that state's extensive financial and administrative commitment to Douglas. New York has paid many thousands of dollars to provide appropriate care for Douglas. Although changing political conditions suggest that New York's funding for out-of-state care facilities is coming to an end, there is no suggestion that New York's commitment to Douglas has ceased. He remains deeply immersed in the New York administrative process. Indeed, the record suggests that the state will continue to provide care for Douglas in New York when an appropriate in-state facility is found.

By contrast, Pennsylvania appears to have made no commitment to Douglas. While the Pennsylvania Orphan's Court exercised jurisdiction over Douglas in order to appoint a guardian, it did not address the jurisdiction issue.

The intent of Douglas' mother (and legal guardian) are also persuasive. Ms. Last has maintained that Douglas is a citizen of New York and that New York is his "home." Douglas made regular visits "home" until his recent injuries made it impracticable. While she purchased a home near the Institute to facilitate visits following the accident, Ms. Last maintains that, given the chance, she would gladly take Douglas home to New York were facilities made available.

The primary issue militating in favor of domicile in Pennsylvania is the long duration of Douglas' residence at the Institute. While Douglas' extensive period of residence in Pennsylvania clearly make this case unusual, Douglas never severed ties with his home state of New York. On the contrary, New York facilitated and funded Douglas' placement in the Institute as a means of providing appropriate care to one of its citizens. Had a comparable facility been available within New York State, the evidence suggests that Douglas would have been placed in that facility.

## IV. CONCLUSION

I conclude that Douglas Last is a citizen of New York. Complete diversity exists among the parties and the amount in controversy exceeds $50,000. Diversity jurisdiction is proper. Defendants' motion will therefore be denied.

An appropriate Order follows.

### *ORDER*

AND NOW, this 29 day of July, 1996, upon consideration of Defendants' Motion to Dismiss Complaint for Lack of Jurisdiction (Doc. No. 11) Plaintiff's Response (Doc. No. 17) Defendants' Reply (Doc. No. 19) and Plaintiff's Sur–Reply (Doc. No. 20), IT IS HEREBY ORDERED THAT:

1. Defendants' Motion is DENIED.