James H. JOHNSON, individually and as Personal Representative of the Distributees of the Estate of William H. Johnson, Deceased, Plaintiff,

v.

The SMITHSONIAN INSTITUTION and Michael Rosenfeld Gallery, Inc., Defendants.

No. 97 CIV. 5190(CBM).

United States District Court, S.D. New York.

Jan. 18, 2000.

M. Eugene Gibbs, Gibbs Law Firm, for Plaintiff.

Peter R. Stern, Thomas E. Hone, Berger, Stern & Webb, LLP, for Defendants.

*MEMORANDUM OPINION*

MOTLEY, District Judge.

## BACKGROUND

William H Johnson was a prolific artist during the 1920s through 1940s. Johnson was born in South Carolina in 1901. He studied art in New York and Massachusetts in the 1920s. Johnson then moved from New York to Denmark in 1946.

While traveling in Norway in 1947 Johnson was diagnosed with tertiary syphilis and deemed mentally incompetent. In 1947 Johnson was repatriated to the United States. He was involuntarily committed to Central Islip State Hospital in New York, where he remained until his death in 1970. In 1948 a Committee of the Person and Property of Johnson ("Committee") was appointed by the New York State Supreme Court to administer his assets. The Committee stored over 1,000 pieces of Johnson artwork until 1956, when the New York State Supreme Court granted the Committee's request to abandon the art as worthless and thereby save the costs of maintenance and storage. This artwork is referred to as the "1956 artwork". The Harmon Foundation, a New York nonprofit organization, took possession of the "1956 artwork" and restored it. In 1967 the Foundation transferred 1,154 pieces of Johnson artwork to the Smithsonian Institution without consideration. Most of the Johnson artwork remains in the Smithsonian today. The 1956 acquisition was not the Harmon Foundation's first encounter with Johnson artwork. The Harmon Foundation had held some of Johnson's artwork as a sales agent during his lifetime. In 1946 the artist informed the Harmon Foundation that he was moving to Denmark and requested the return of all his artwork.

James H. Johnson, a nephew of the deceased artist, now claims that, unbeknownst to the artist, the Harmon Foundation kept some of Johnson's work. Such artwork allegedly withheld from Johnson was not in the possession of the Committee and would not have been subject to the 1956 New York Supreme Court order. This artwork is referred to as the "1946 artwork". In the 1980s and 1990s the Michael Rosenfeld Gallery, a New York corporation, somehow acquired about 30 pieces of Johnson artwork.

In June of 1998 this court ruled on several issues in this case. See generally Johnson v. Smithsonian, 9 F.Supp.2d 347 (S.D.N.Y.1998) (dismissing the action against all defendants as to the "1956 artwork" under the Rooker–Feldman doctrine). However, this court found it had jurisdiction over claims regarding the "1946 artwork". This court's opinion held that the Harmon Foundation was a necessary party to claims regarding the "1946 artwork". The opinion stated that the court could not order joinder because the action for recovery of chattel against the Harmon Foundation would be barred by the three year statute of limitations which began to run in 1946. The court then dismissed the claims as to the "1946 artwork" deeming the Harmon Foundation a necessary party against which claims had long since become stale. The opinion also offered alternative grounds to dismiss claims against the Smithsonian regarding all Johnson artwork because of plaintiff's failure to comply with jurisdictional provisions of the Federal Torts Claims Act ("FTCA").

Plaintiff appealed this decision. In August of 1999 the Second Circuit affirmed in part, reversed in part, and remanded. See generally Johnson v. Smithsonian, 189 F.3d 180 (2d Cir.1999). The circuit court upheld this court's interpretation of the Rooker–Feldman doctrine to preclude this court's jurisdiction over claims regarding artwork subject to the 1956 state court order. The circuit court affirmed as to the dismissal of all claims against the Smithsonian on this court's alternative grounds that plaintiff failed to comply with the FTCA. The circuit court reversed and remanded as to the dismissal of claims against the Rosenfeld Gallery as to the "1946 artwork". The circuit court disagreed with this court's holding that the Harmon Foundation was a necessary party within the meaning of Fed.R.Civ.P. 19(a). The circuit court noted that a party is not necessary merely because the plaintiff must obtain evidence from that party. The Harmon Foundation is not a necessary and indispensable party because there is no claim that its interests cannot

be protected unless it is a party, or that no complete relief is possible with existing parties, or that no risk of inconsistent judgments exists. Thus, the circuit court remanded the case for judgment regarding claims against the Rosenfeld Gallery regarding the "1946 artwork". The circuit court directed that this court should decide whether it has diversity jurisdiction, whether plaintiff has standing, and any other issues. Thus, the only remaining defendant is the Rosenfeld Gallery as to claims regarding the "1946 artwork".

## DISCUSSION

Plaintiff in this case is James H Johnson, the artist's nephew, suing on behalf of the estate of William H. Johnson. The Rosenfeld Gallery is the only remaining defendant. The dismissal of the Smithsonian Institution eliminated all federal questions as well as the possibility of supplemental jurisdiction. With no federal questions remaining, only diversity of citizenship might extend the limited jurisdiction of the federal district courts to include the case at issue. As no diversity of citizenship exists between the parties, this court lacks subject matter jurisdiction over this case.

There is no dispute that the defendant, the Rosenfeld Gallery is a citizen of New York. Plaintiff has failed to show that it is a resident, domiciliary, or citizen of any state other than New York. The plaintiff in this case seeks to invoke the jurisdiction of the federal courts and as such "must carry throughout the litigation the burden of showing that he is properly in court". *McNutt v. General Motors Accept. Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). This court ordered plaintiff on September 16, 1999 to submit a memorandum of law outlining any arguments which could establish diversity jurisdiction. Plaintiff's failure to submit such memorandum suffices to establish plaintiff's failure to meet this burden. Although plaintiff's failure to submit the memorandum as ordered provides sufficient reason to dismiss plaintiff's claims, the court has examined the relevant facts to determine that diversity of citizenship does not exist.

In determining whether diversity exists, the court must first identify the citizenship of the relevant parties. In this case the citizenship of defendant is simple and will be addressed first. As noted above, the only remaining defendant is the Rosenfeld Gallery, a New York corporation, which is undeniably a citizen of New York. The plaintiff is James H. Johnson suing as the personal representative of the estate of William H. Johnson. "Since 1988 the citizenship of a decedent, not the executor, is the only citizenship pertinent for diversity purposes." *Adler v. Adler,* 862 F.Supp. 70, 72 (S.D.N.Y.1994). Johnson apparently died intestate. Thus, the only citizenship of relevance is that of William H. Johnson at the time of his death. "Citizenship for diversity purposes is synonymous with domicile". *Last v. Elwyn, Inc.,* 935 F.Supp. 594, 596 (E.D.Pa.1996). To determine plaintiff's domicile, the court must consider the location of William H. Johnson's residence as well as any intent he may have had to change his residence.

It is undisputed that William H. Johnson died in New York after living in a New York hospital for more than twenty years. The Fourteenth Amendment to the Constitution of the United States establishes every citizen's right to citizenship of the state wherein that citizen resides. As such, it is undisputed that William H. Johnson was a resident and citizen of New York at the time he died. While residence is a major component of domicile intent is a factor as well. Thus, the court must also consider intent to return to a place of previous residence to determine whether plaintiff may claim domicile and thereby citizenship of a state other than New York for purposes of diversity jurisdiction.

Plaintiff now contends that William H. Johnson intended to return to South Carolina rendering him a domiciliary of that state. In this connection plaintiff relies on two things: 1) an amendment to an

application for appointment in South Carolina regarding the decedent's estate; and 2) an unsigned letter purportedly written on behalf of William H. Johnson's mother. Plaintiff failed to offer any credible evidence of a domicile in South Carolina. Although given due notice, as mentioned above, plaintiff failed to submit a memorandum of law regarding diversity of citizenship. Plaintiff did submit a document entitled, "Reply and Memorandum of Law in Support of Plaintiff James H. Johnson's Motion for Sanctions" which devotes seven lines to the combined issues of diversity jurisdiction and standing. Plaintiff offers only the conclusory statement that William H. Johnson was domiciled in South Carolina at the date of his death. There is no evidence in the record to substantiate this conclusion. Plaintiff offers an unsigned letter purportedly written by Levere H. Johnson in 1947 on behalf of Alice Johnson, William H. Johnson's mother. In that letter Mrs. Johnson allegedly expresses her desire to arrange for her son to be placed in a hospital near her home in Florence, South Carolina. Assuming this letter authentically reflects the desires of Mrs. Johnson as of 1947, it is not sufficient to impute to her son a desire to return to the state of his birth. Plaintiff proffers one other piece of evidence which is also insufficient to establish a South Carolina domicile for William H. Johnson. Plaintiff submits an order dated October 29, 1999 signed by Patsy S. Stone a Probate Court Judge in Florence County, South Carolina. Judge Stone's order simply grants leave to amend an application for appointment regarding the estate of William H. Johnson to read that the decedent was domiciled in Florence County, South Carolina at the time of his death. An uncontested order granting a party leave to amend an application in no way purports to be a final ruling on the merits of the assertions made by the party in that application. Plaintiff has offered no evidence that William H. Johnson intended to return to South Carolina, let alone Florence County, South Carolina, and thus has failed to establish domicile outside of New York.

■ The fact that Johnson was deemed incompetent for the two decades during which he resided in a New York hospital does not, in and of itself, deny plaintiff an opportunity to attempt to show that he harbored an intent to move away from New York. "A person deemed legally incompetent is presumed to lack the capacity to change domiciles. However, this presumption is not immutable". *Last v. Elwyn, Inc.*, 935 F.Supp. 594, 597 (E.D.Pa.1996). "Courts have recognized a change of domicile for an incompetent person". *Juvelis v. Snider*, 68 F.3d 648, 654 (3rd Cir.1995). Thus, if plaintiff had submitted some credible evidence as to Johnson's state of mind and intentions, plaintiff could have tried to prove a South Carolina domicile. Alternatively, if plaintiff showed that Johnson lacked the necessary mental faculties required to select New York as his domicile or otherwise change domicile for the duration of his incompetence, the court could instead look at William H. Johnson's domicile in 1947 at the moment before he became mentally incompetent, and still reach the same result. In 1947 William H. Johnson was a United States citizen who was residing abroad. As the record lacks any evidence of an expressed intent to repatriate, William H. Johnson was also domiciled abroad at that time. "A suit by or against United States citizens domiciled abroad may not be premised on diversity." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir.1990). Thus, the court would also dismiss for lack of subject matter jurisdiction if it looked to the artist's domicile at the time he was last competent.

Lacking subject matter jurisdiction, the court need not reach the issue of standing. By failing to identify the distributees of Johnson's estate or present any evidence to show that James H. Johnson has acquired any rights to be an heir, plaintiff has failed to establish standing. Thus, this

case could not go forward even if subject matter jurisdiction existed.

## CONCLUSION

Absent diversity of citizenship, this court lacks subject matter jurisdiction to adjudicate this case. As such this case shall be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.