**James H. JOHNSON, individually and as Personal Representative of Distributees of the Estate of William H. Johnson, Deceased, Plaintiff–Appellant,**

v.

**THE SMITHSONIAN INSTITUTION, Michael Rosenfeld Gallery, Inc., Defendants–Appellees,**

**Docket No. 98–9279.**

United States Court of Appeals, Second Circuit.

Argued June 9, 1999.

Decided Aug. 13, 1999.

M. Eugene Gibbs, Gibbs & Scott, Florence, SC, for Plaintiff–Appellant.

Peter R. Stern, Berger Stern & Webb, LLP, New York, N.Y. (Thomas E. Hone, Berger Stern & Webb, LLP, New York, NY, on the brief), for Defendant–Appellee Michael Rosenfeld Gallery, Inc.

James L. Cott, Assistant United States Attorney, New York, N.Y. (Mary Jo White, United States Attorney for the Southern District of New York, New York, NY; Neil M. Corwin, Gideon A. Schor, Assistant United States Attorneys, New York, NY, on the brief) for Defendant–Appellee The Smithsonian Institution.

Before: FEINBERG and SACK, Circuit Judges, and SPRIZZO, District Judge.*

SACK, Circuit Judge:

Plaintiff James H. Johnson, individually and as a purported personal representative of distributees of the estate of William H. Johnson, deceased, commenced this action against the Smithsonian Institution ("Smithsonian") and Michael Rosenfeld

---

* Hon. John E. Sprizzo, of the United States District Court for the Southern District of New York, sitting by designation.

Gallery, Inc. ("Rosenfeld Gallery") asserting, *inter alia,* conversion and replevin claims and seeking the imposition of a constructive trust in an attempt to obtain artwork created by his uncle William H. Johnson ("Johnson")[1] that is now in the possession of the Smithsonian and the Rosenfeld Gallery. Two categories of artwork are at issue in this appeal. The first is Johnson work that was authorized to be abandoned by his estate as worthless pursuant to an April 30, 1956 order issued by the New York State Supreme Court (the "1956 artwork"). The district court found that under the *Rooker–Feldman* doctrine it could not consider any claim against the Smithsonian or the Rosenfeld Gallery with respect to the 1956 artwork. We affirm that portion of the district court's judgment.

The second category of Johnson artwork is works allegedly once in the possession of a third party, the Harmon Foundation (the "1946 artwork"). The plaintiff claims that this work was fraudulently withheld from Johnson when he asked for its return in 1946. This body of work, if it exists, allegedly never became part of Johnson's estate. The district court dismissed the claims against the Smithsonian and the Rosenfeld Gallery with respect to the 1946 artwork because it concluded that the Harmon Foundation was a "necessary" party under Fed.R.Civ.P. 19 that had not been joined and could not be joined because the statute of limitations had run against it. The court also suggested that had it not dismissed the claims against the Smithsonian on that ground, it would have dismissed them on the alternative ground that the plaintiff had failed to comply with the jurisdictional requirements of the Federal Tort Claims Act.

We affirm the dismissal of the claims against the Smithsonian on the alternative ground that the plaintiff failed to comply with the Federal Tort Claims Act. We disagree, however, with the district court's holding that the Harmon Foundation was a

necessary party and therefore reverse and remand for further consideration of its judgment with respect to the claims against the Rosenfeld Gallery.

## BACKGROUND

The background of this case is described in detail in the district court's opinion, *Johnson v. The Smithsonian Institution,* 9 F.Supp.2d 347 (S.D.N.Y.1998). We restate it only insofar as necessary to explain our disposition of this appeal.

According to the allegations in the plaintiff's complaint, Johnson, an African–American artist, was born in South Carolina in 1901. He later lived in New York, France and Scandinavia. From the mid–1920s until 1947 he created well over 1,000 pieces of art—paintings, water colors and prints. He received recognition for his work from several organizations including the Harmon Foundation, a New York nonprofit organization that assisted African–American artists. The Harmon Foundation also served as a caretaker and agent for the sale of some of Johnson's artwork and therefore at various times had Johnson artwork in its possession.

The complaint further alleges that Johnson informed the Harmon Foundation in 1946 that he was moving to Denmark and requested that the Foundation return all of his works. The plaintiff claims that unbeknownst to Johnson the Harmon Foundation returned only some of his work and fraudulently held onto the rest—the 1946 artwork.

While traveling in Norway in 1947, Johnson was diagnosed as suffering from syphilis-induced paresis and pronounced mentally incompetent. On December 1, 1947, after he was repatriated to the United States, Johnson was involuntarily committed to Central Islip State Hospital in New York, where he died in 1970.

On September 21, 1948, the New York State Supreme Court declared that John-

---

1. The plaintiff, whose name is also Johnson, is referred to throughout as the "plaintiff."

son was incompetent and appointed an attorney to serve as his Committee of the Person and Property in order to administer the assets of his estate. The Committee administered Johnson's property for seven years. A Special Guardian was appointed by the state to represent Johnson's rights and interests during a year-long final accounting of Johnson's property.

While the Committee was administering the estate, it collected Johnson's artwork and stored it in a warehouse in New York from 1948 to 1956. The Committee had those works appraised by someone whom the Committee referred to as a "recognized expert and specialist in appraising water colors, paintings, and prints and other objects of art," who determined that the paintings were worth a "maximum nominal value of $100.00." As summarized by the Committee, the appraiser concluded "that based upon his experience in evaluation and appraising paintings of all kinds, the paintings, water colors and prints were of such inferior quality, that no purchaser therefor could be or would be found. In brief, these paintings, water colors and prints were infantile." The Committee also unsuccessfully attempted to sell the pieces through advertisements in *The New York Times*. The Committee then told the state court that "these paintings, water colors and prints are worthless and cannot be sold or otherwise disposed of" and requested permission to abandon the artwork as "worthless and of no value."

The Committee prepared a final accounting of the estate in which it detailed its intent to abandon the artwork. The Committee caused the accounting to be served upon the New York State Supreme Court, Johnson, Johnson's mother who resided in South Carolina, and Johnson's Special Guardian. No objections to the abandonment were filed. The New York State Supreme Court therefore ordered that the "committee be and he hereby is authorized to abandon as worthless and of

no value, paintings, water colors and prints belonging to [Johnson]."

Approximately one month after the abandonment order was issued, according to the plaintiff, the Committee transferred many pieces of Johnson's artwork to the Harmon Foundation without consideration. The Foundation had expressed an interest in attempting to restore the paintings for their historical significance. After the transfer, according to the plaintiff, the Harmon Foundation held in its possession both the 1946 artwork, which it had withheld from Johnson, and the 1956 artwork, which the Committee had abandoned.

The Harmon Foundation spent time and money restoring the artwork and then donated some 1,154 pieces of it to the Smithsonian in 1967. Most of that artwork remains there today. It is now recognized as having substantial value—artistically, monetarily and historically.

The Rosenfeld Gallery acquired approximately thirty pieces of Johnson's work in the 1980's or 1990's from sources not disclosed in the record. Because the parties have not found any list or catalog that would help identify the contents of the group of artworks alleged to have been withheld from Johnson in 1946 and the group the state court authorized to be abandoned in 1956, they also have not been able to determine whether the works held by the Rosenfeld Gallery are 1946 artwork, 1956 artwork, or something else.

Members of Johnson's family have demanded on several occasions that the Smithsonian return Johnson's work to them. There is some evidence to suggest that a demand was made as early as 1971 as a result of which the Smithsonian gave two of Johnson's works to two male family members. Also, a letter dated May 1987, reproduced in the record, contains a request by one of Johnson's nieces to the director of the Smithsonian for the return of some of Johnson's paintings. That request was denied.

In September 1995, the plaintiff's attorney on behalf of the Johnson family, which plaintiff seeks to represent here, demanded that the Smithsonian and the Rosenfeld Gallery return to Johnson's family all of Johnson's paintings in its possession. That demand was not met. On February 24, 1997, the plaintiff's attorney on behalf of Johnson's then-living heirs, demanded, also without success, that the Smithsonian pay him $2 billion in damages in compensation for the Johnson artwork it possesses.

■ On July 16, 1997, the plaintiff initiated the instant lawsuit by filing a complaint against both the Smithsonian and the Rosenfeld Gallery. The Harmon Foundation was not made a party to the action. Each defendant moved to dismiss the complaint. The district court dismissed the claims relating to the 1956 artwork under Fed.R.Civ.P. 12(b)(1) on the grounds that they were barred by the *Rooker–Feldman* doctrine, under which the court did not have jurisdiction to review the abandonment order issued by the New York State Supreme Court. *Johnson*, 9 F.Supp.2d at 351. The court held that the claims against the Rosenfeld Gallery and the Smithsonian relating to the 1946 artwork also failed because the Harmon Foundation was a necessary and indispensable party to the litigation under Fed.R.Civ.P. 12(b)(7) and 19 but could not be joined because the statute of limitations had long since run on any claims against it. *See id.* at 353–54. The court also suggested that had it not dismissed the plaintiff's claims against the Smithsonian on that basis, it would have dismissed them on the alternative ground that the plaintiff failed to comply with the jurisdictional provisions of the Federal Tort Claims Act ("FTCA"). *See id.* at 353. The plaintiff appeals.[2]

**2.** The plaintiff also asks this Court to consider the district court's denial of his motions (1) for leave to amend the complaint and (2) for reconsideration of the order dismissing the action. We do not have jurisdiction to consider those issues because the plaintiff's no-

## DISCUSSION

### I. The Artwork Abandoned in 1956

■ The district court dismissed all of the plaintiff's claims regarding the 1956 artwork under Fed.R.Civ.P. 12(b)(1) on the grounds that the *Rooker–Feldman* doctrine deprived the court of subject matter jurisdiction. We review that portion of the district court's decision *de novo*. *See Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir.1996).

■■ What is now known as the *Rooker–Feldman* doctrine was first announced in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and was re-affirmed in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The principle holds that, among federal courts, only the Supreme Court has subject matter jurisdiction to review state court judgments. *See Moccio*, 95 F.3d at 197 (federal review of state court judgments "can occur only by way of a certiorari petition to the Supreme Court"); *see also* 18 James Wm. Moore et al., *Moore's Federal Practice* § 133.30[3][a] (3d ed.1999) (doctrine is premised on prudential grounds of preserving system consistency as well as on the statutory grounds that 28 U.S.C. § 1257 gives the United States Supreme Court exclusive federal jurisdiction to review state court judgments while 28 U.S.C. §§ 1331 and 1334 give federal district courts original but not appellate jurisdiction). The *Rooker–Feldman* doctrine also bars federal courts from considering claims that are "inextricably intertwined" with a prior state court determination. *See Feldman*, 460 U.S. at 482 n. 16, 103 S.Ct. 1303; *Moccio*, 95 F.3d at 199–200 ("[T]he Supreme Court's use of 'inextricably intertwined' means, at a mini-

tice of appeal specifically states that he is appealing only the district court's June 25, 1998 decision dismissing the complaint. *See* Fed. R.App. P. 3(c)(1)(B); *see also Capital Parks, Inc. v. Southeastern Adver. & Sales Sys., Inc.*, 30 F.3d 627, 630 (5th Cir.1994).

mum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding ..., subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion."); *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996) ("[T]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, *Rooker–Feldman* directs that the lower federal courts lack jurisdiction.").

■ The district court concluded that the plaintiff's claims relating to the 1956 artwork are barred by the *Rooker–Feldman* doctrine. We agree. The plaintiff asserts that the Smithsonian and the Rosenfeld Gallery should not be entitled to retain possession of Johnson's works of art because the New York State Supreme Court's 1956 order pronouncing the works worthless and allowing their abandonment was improper. He argues that the 1956 appraisal of the artwork was faulty because it did not consider all of Johnson's work or his awards and achievements and was not itself even submitted to the state court.[3]

The district court correctly ruled that the plaintiff's allegations are in fact an indirect, "inextricably intertwined," challenge to the order issued by the state court. *See Johnson*, 9 F.Supp.2d at 351 ("By challenging defendants' possession of the artwork (in the form of the instant action), plaintiff is indirectly attacking the judicial determination in which he was represented which legally enabled the chain of

events resulting in defendants' possession."). If the district court were to award the plaintiff relief, it would have the effect of impermissibly reversing the 1956 state court decision and the related order which gave the Committee the right to abandon the artwork and cut off the Johnson family's ownership rights.

The plaintiff does not dispute that both Johnson's Special Guardian and his mother received notice of the proposed abandonment of the artwork and that neither posed any objection. The interests of the plaintiff, both as the proclaimed representative of the distributees and as an alleged representative of the estate, were therefore represented at the state court proceedings. *See In re New York Asbestos Litig.*, 738 F.Supp. 66, 68 (E.D.N.Y.1990) ("[O]rdinarily a personal representative or distributee is in privity with the decedent where she has a successive relationship to the same right of property.") (citing *In re Estate of Werger*, 64 Misc.2d 1094, 315 N.Y.S.2d 943, 946 (N.Y.Sur.1970)), *aff'd sub nom. Kreppein v. Celotex Corp.*, 969 F.2d 1424 (2d Cir.1992). Because no objection was raised to the final accounting in which the Committee included its intention to abandon all of Johnson's artwork,[4] a federal district court lacks jurisdiction to consider the plaintiff's objections almost forty-five years later. *See Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998) (jurisdiction lacking if its exercise "would result in the reversal or modification of a state court judgment").

■ The plaintiff contends that this case is not subject to the *Rooker–Feldman* bar because the 1956 order was fraudulently obtained. We disagree. This Court

---

3. Only the Committee's summary of the appraisal was submitted to the state court.

  The plaintiff also argues for the first time on appeal that the order was improper because the state court did not consider that Johnson's mother may have had a property interest in some of Johnson's artwork. Because this argument is presented for the first time on appeal, we decline to consider it. *See*

*Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Greene v. United States*, 13 F.3d 577, 586 (2d Cir.1994).

4. The record indicates that the only objection to the final accounting was posed by the Special Guardian and concerned the Committee's fees. The portion objected to was later corrected by the Committee.

has never recognized a blanket fraud exception to *Rooker–Feldman*. The cases upon which the plaintiff relies to the contrary are unavailing. In *Lawrence v. Cohn*, 932 F.Supp. 564 (S.D.N.Y.1996), for example, the court held that the plaintiff could sue the executor of an estate for fraud without violating the *Rooker–Feldman* doctrine because such a suit would not directly undermine the state court decision that finalized the distribution of the decedent's assets. *See id.* at 575. Here, the plaintiff seeks in effect to set aside the state court's order. That he cannot do in a federal district court. *Cf. Levitin v. Homburger*, 932 F.Supp. 508, 518–19 (S.D.N.Y. 1996) (plaintiff should seek remedy in state court, rather than federal court, to undo challenged judgment because "[i]t is settled law that a court has inherent power to vacate its own judgment on proof that fraud has been perpetrated on the court"), *aff'd*, 107 F.3d 3 (2d Cir.1997) (unpublished table decision).

■ The plaintiff also tries to circumvent *Rooker–Feldman* by arguing that he is not contesting the 1956 order but is claiming that the Committee never abandoned the artwork after receiving the court order. As the plaintiff correctly notes, "[a]bandonment of property requires a confluence of intention and action by the owner", *Hoelzer v. City of Stamford, Conn.*, 933 F.2d 1131, 1138 (2d Cir. 1991). There is, however, no allegation that either of those two elements was missing here.

## II. The 1946 Artwork

■ The district court also dismissed all the plaintiff's claims concerning the 1946 artwork. The court reasoned that the Harmon Foundation was a necessary party with respect to those claims, but the statute of limitations having run against it, it could not be made a defendant. We hold to the contrary that the Harmon Foundation was not a necessary party with respect to the claims against either defendant. We conclude nonetheless that the claims against the Smithsonian should have been dismissed under Rule 12(b)(1) because the plaintiff failed to comply with the FTCA. The court therefore lacked subject matter jurisdiction.[5] The claims against the Rosenfeld Gallery, however, which are of course not governed by the FTCA, were improperly dismissed. The claims against the gallery must be remanded for the district court to decide whether the court has diversity jurisdiction, whether the plaintiff has standing with respect to the claims against the gallery, and any additional issues that may be necessary for the court to decide in order to resolve this litigation.

### A. *Rooker–Feldman*

■ Both the Smithsonian and the Rosenfeld Gallery argue that plaintiff's claims concerning the 1946 artwork are also barred by the *Rooker–Feldman* doctrine. The district court correctly rejected that argument. The works of art allegedly withheld from Johnson by the Harmon Foundation were never made a part of the 1956 court proceedings. None of it was ever appraised by the Committee, was ever in the possession of the Committee or was ever considered by the state court. The granting of any relief as to the 1946 artwork would therefore have no impact on the 1956 court order, and the *Rooker–Feldman* bar does not apply.

### B. *Fed.R.Civ.P. 19* Joinder

■ The Smithsonian and the Rosenfeld Gallery contend that this litigation cannot proceed without the Harmon Foundation as a party. They argue that because no list or catalog that might help to differentiate between the 1946 artwork

---

5. "We need not affirm for the reasons expressed by the district court but may affirm on any ground supported in the record." *McNally Wellman Co. v. New York State Elec.*

& *Gas Corp.*, 63 F.3d 1188, 1194 (2d Cir. 1995) (citing *Revak v. SEC Realty Corp.*, 18 F.3d 81, 83 (2d Cir.1994)).

and the works of art affected by the 1956 state court order has been found, the court and the parties have no way to determine the provenance of the artwork or the events that occurred in 1946 without the help of the Harmon Foundation. The district court agreed. It dismissed the plaintiff's 1946 artwork claims under Fed. R.Civ.P. 12(b)(7) and 19 because the Harmon Foundation was thus a necessary party but the statute of limitations prevented it from being joined in the litigation.[6]

▪ Before dismissing a complaint under Rule 12(b)(7), a district court must determine whether the missing party is necessary within the meaning of Fed. R.Civ.P. 19. We review for abuse of discretion the district court's decision that the Harmon Foundation is a necessary party. *See Jota v. Texaco, Inc.*, 157 F.3d 153, 161 (2d Cir.1998).

▪ According to Rule 19, an absent party is necessary to a litigation if (1) "complete relief cannot be accorded among those already parties," or (2) the absent party "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [that party's] absence may" either "(i) as a practical matter impair [that] person's ability to protect that interest or (ii) leave [the remaining] parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest." Fed.R.Civ.P. 19(a). If the court determines that any of the criteria set forth in Rule 19(a) is met, then it must order that the absent person be joined as a party. *See id.* Where, however, joinder of that party is not feasible, the court must then consider under Rule 19(b) "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." Fed.R.Civ.P. 19(b); *see also Jota*, 157 F.3d at 162.

▪ We conclude that the district court erred in finding the Harmon Foundation to be a necessary party within the meaning of Rule 19(a). The district court based its ruling solely on its conclusion that without the Foundation the court "could not begin to determine whether the Harmon Foundation unlawfully retained pieces of Johnson's art in 1946, or which pieces of the art were kept, or how Johnson came to learn of this tortious act." *Johnson*, 9 F.Supp.2d at 353. That is not a proper Rule 19 consideration.

> [T]he question of whether or not an entity or individual should be a party to an action is something quite different from the questions and problems associated with obtaining evidence from such an entity or individual. Rule 19 … does not list the need to obtain evidence from an entity or individual as a factor bearing upon whether or not a party is necessary or indispensable to a just adjudication.

*Costello Publ'g Co. v. Rotelle*, 670 F.2d 1035, 1044 (D.C.Cir.1981); *see also Brown v. United States*, 42 Fed. Cl. 538, 564 (Fed.Cl.1998) (a party is not "necessary" for Rule 19 purposes merely because the

---

**6.** The statute of limitations had run against the Harmon Foundation because it is alleged to have been the entity that wrongfully took and retained the Johnson artwork—in effect, a "thief." New York's three year statute of limitations with respect to the recovery of a chattel from such a person or entity "runs from the time of the theft … even if the property owner was unaware of the theft at the time that it occurred." *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 567 N.Y.S.2d 623, 626, 569 N.E.2d 426 (1991). "Although seemingly anomalous," *id.*, the Rosenfeld Gallery was not protected by the same statute of limitations because the gallery was not alleged to have been a "thief." The statute of limitations does not begin to run on any claims against a good-faith purchaser of stolen artwork, which the gallery is alleged to have been, until "the true owner makes demand for return of the chattel and the person in possession of the chattel refuses to return it." *Id.* No demand was made upon the Rosenfeld Gallery until 1995 and the complaint in this lawsuit was served less than three years later, in 1997, within the time prescribed by the statute.

plaintiff needs to obtain evidence from it and the defendant would have to defend the absent party's actions at trial); *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1498 (10th Cir.1983) (rejecting notion "that without the broader discovery available from [the absent] party, complete relief can not be granted" and stating "[w]e have found no cases which approve of the use of rule 19 simply to allow greater discovery, and we can discern no policy which such an expansion of the rule would promote").

The Smithsonian and the Rosenfeld Gallery have in their possession the property at issue. Complete relief therefore may be accorded among those who are already parties to the action. The Foundation, moreover, has not appeared and asserted that its interests cannot be protected without its presence as a party, and there is no risk of inconsistent judgments. The Foundation therefore is not a necessary and indispensable party. *See Jota*, 157 F.3d at 162 (abuse of discretion to dismiss entire complaint on Rule 19 grounds where much of the relief sought could be fully provided by the named parties without any participation by the absent party); *see also Ark-wright–Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 209 (2d Cir. 1985).

C. *Federal Tort Claims Act*

The Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, which waives the United States' sovereign immunity against certain claims sounding in tort, governs the plaintiff's claims against the Smithsonian. *See Expeditions Unlimited Aquatic Enters., Inc. v. The Smithsonian Inst.*, 566 F.2d 289, 296 (D.C.Cir.1977) (panel opinion reprinted as appendix to opinion en banc) (FTCA applies to the Smithsonian because "the nature of its function as a national museum and center of scholarship, coupled with the substantial governmental role in funding and oversight, make the institution an 'independent establishment of the United States,' within the 'federal agency' definition" contained within the statute (footnotes omitted)), *cert. denied*, 438 U.S. 915,

98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978); *Mac'Avoy v. The Smithsonian Inst.*, 757 F.Supp. 60, 67–68 (D.D.C.1991) (replevin and conversion claims against the Smithsonian must comply with the requirements of the FTCA).

In order to state a claim under the FTCA, the person attempting to assert it must comply with several strictly construed prerequisites. The operative one here is that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b). Unless a plaintiff complies with that requirement, a district court lacks subject matter jurisdiction over a plaintiff's FTCA claim. *See United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (the statute of limitations contained in § 2401(b) is strictly construed because the FTCA "waives the immunity of the United States"). The burden is on the plaintiff to plead and prove compliance with § 2401(b). *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir.1987), *cert. denied*, 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988). The plaintiff did not do so here.

Claims under the FTCA accrue either at the time of injury or when the plaintiff has, or with reasonable diligence should have, discovered the facts critical to his or her injury, whichever is earlier. *See Kubrick*, 444 U.S. at 118–22, 100 S.Ct. 352; *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir.1998). The plaintiff's family may have known that the Smithsonian possessed Johnson's works of art as early as 1971 when, there is evidence to suggest, two of Johnson's works were given to members of Johnson's family. Certainly the family was aware of its alleged injury and its claims accrued no later than May 1987 as evidenced by the letter written by Johnson's niece to the director of the Smithsonian demanding the return of the artwork to Johnson's family.

There also is no dispute that neither the plaintiff nor any members of his

family filed a timely formal administrative claim against the Smithsonian. Although Johnson's family sent letters to the Smithsonian demanding the artwork's return in 1987 and 1995, the letters did not include a claim for a sum certain and therefore did not constitute the filing of a formal administrative claim for FTCA purposes. *See* 28 C.F.R. § 14.2(a) (a formal claim is not filed for purposes of 28 U.S.C. § 2401(b) until a Federal agency receives from a claimant written notification of an incident "accompanied by a claim for money damages in a sum certain for injury to or loss of property ... and is accompanied by evidence of his authority to present [the] claim"); *see also Kendall v. Watkins*, 998 F.2d 848, 852 (10th Cir.1993) (plaintiff's letters to federal agency that outlined the type of relief plaintiff wanted but did not state a claim for a sum certain did not satisfy the FTCA's formal administrative claim requirement), *cert. denied*, 510 U.S. 1120, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994).

The plaintiff claims to have filed a formal claim against the Smithsonian demanding a sum certain on February 24, 1997. The government disputes that. Even if he did, however, any such filing was well outside the two year statute of limitations imposed by § 2401(b) because the alleged injury accrued prior to February 1995. Because the district court lacked jurisdiction to consider the claims against the Smithsonian,[7] we affirm the dismissal of those claims.

## CONCLUSION

We conclude that the district court properly dismissed the plaintiff's 1956 artwork claims against both the Smithsonian and the Rosenfeld Gallery under Fed.R.Civ.P. 12(b)(1) on the ground that the *Rooker–*

*Feldman* doctrine deprived the court of subject matter jurisdiction to consider matters inextricably intertwined with the 1956 order issued by the New York State Supreme Court. We therefore affirm that portion of the district court's decision.

The district court erred, however, when it dismissed the remainder of the complaint on the Rule 12(b)(7) ground that the Harmon Foundation was a necessary party to this action within the meaning of Rule 19. The parties have demonstrated only that the absence of the Foundation will create evidentiary difficulties. That is not a proper Rule 19 consideration. The 1946 artwork claims against the Smithsonian must be dismissed, however, on the ground that the plaintiff failed to comply with the FTCA's jurisdictional requirement that a formal administrative claim seeking a sum certain be filed within two years after the contested injury accrued. We therefore affirm the dismissal of the claims against the Smithsonian because the district court lacked subject matter jurisdiction to consider them.

The district court has not decided whether it has diversity jurisdiction over the dispute between the plaintiff and the Rosenfeld Gallery or whether the plaintiff has standing to maintain the action against it. We therefore reverse the district court's dismissal of the 1946 artwork claims and remand the action against the Rosenfeld Gallery for the court to determine those issues and such others as may be necessary or appropriate for the court to resolve this action.

Each party shall bear its own costs on this appeal.

---

7. The only administrative claim the plaintiff alleges to have been filed with respect to the Smithsonian was presented on behalf of the "then-living heirs" of the Johnson estate. As we have noted, their claim is now barred by the FTCA's statute of limitations because the heirs' knowledge of the Smithsonian's possession of the Johnson artwork dates back at least to 1987, too long before the formal administrative claim was made for it to have been timely. If the plaintiff means to assert some individual claim in the artwork against the Smithsonian, that too fails inasmuch as no such individual administrative claim, a prerequisite for this judicial claim, was ever made.