**Kevin O'ROURKE, Plaintiff–Appellant,**

v.

**SMITHSONIAN INSTITUTION PRESS and The Smithsonian Institution, Defendants–Appellees.**

Docket No. 04–0151–CV.

United States Court of Appeals, Second Circuit.

Argued: Oct. 13, 2004.

Decided: Feb. 16, 2005.

\* Honorable Jed S. Rakoff, of the United States District Court for the Southern District of

Kevin O'Rourke, Rockville Centre, New York, Plaintiff pro se.

Emily S. Reisbaum, Assistant United States Attorney, New York, New York (David N. Kelley, United States Attorney for the Southern District of New York, Meredith E. Kotler, Assistant United States Attorney, New York, New York, on the brief), for Defendants–Appellees.

Before: KEARSE and CALABRESI, Circuit Judges, and RAKOFF, District Judge \*.

New York, sitting by designation.

KEARSE, Circuit Judge.

Plaintiff *pro se* Kevin O'Rourke appeals from a judgment of the United States District Court for the Southern District of New York, Kimba M. Wood, *Judge,* dismissing his amended complaint ("Complaint") against defendants Smithsonian Institution and its operating unit the Smithsonian Institution Press (collectively the "Smithsonian") for copyright infringement. The district court granted the Smithsonian's motion to dismiss for lack of subject matter jurisdiction on the ground that 28 U.S.C. § 1498(b) gives the United States Court of Federal Claims exclusive jurisdiction over copyright infringement actions against "the United States," and that that phrase encompasses the Smithsonian. On appeal, O'Rourke contends that the Smithsonian should not be considered "the United States" within the meaning of § 1498(b). For the reasons that follow, we reject his arguments and affirm the judgment of the district court.

## I. BACKGROUND

The Complaint alleges that, in the mid-1990s, O'Rourke wrote and published an original book entitled *Currier and Ives: The Irish and America* (the "O'Rourke Book" or the "1995 Book") and that O'Rourke owns the United States copyright on the 1995 Book. (Complaint ¶¶ 7–10.) The Complaint alleges that in or about 2001, the Smithsonian, "a trust instrumentality of the United States" (Complaint ¶ 5), published a book entitled *Currier and Ives: America Imagined* (the "Smithsonian Book") and that sections of the Smithsonian Book "were largely copied from" the O'Rourke Book (Complaint ¶ 11).

The Smithsonian moved to dismiss the Complaint for lack of subject matter jurisdiction on the ground that the United States Court of Federal Claims ("Court of Claims") has exclusive jurisdiction over this action by reason of 28 U.S.C. § 1498(b). That section provides that

> whenever the copyright in any work protected under the copyright laws of the United States shall be infringed *by the United States,* by a corporation owned or controlled by the United States, or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government, *the exclusive action which may be brought for such infringement shall be an action by the copyright owner against the United States in the Court of Federal Claims* . . . .

28 U.S.C. § 1498(b) (emphases added). The Smithsonian argued that it is within the term "the United States" as used in § 1498(b).

In support of this contention, the Smithsonian submitted the sworn declaration of its general counsel describing its status and operations, along with a memorandum of law describing, *inter alia,* judicial treatment of the Smithsonian under other federal statutes. The general counsel's declaration stated, in pertinent part, as follows:

> 2. The Smithsonian Institution is a trust instrumentality of the United States established by Act of Congress in 1846, 20 U.S.C. § 41 *et seq.*
>
> 3. As such, the Smithsonian Institution reports annually to Congress on its budget and receives appropriations from Congress. Approximately two-thirds of the Smithsonian Institution's annual operating budget is derived from federal appropriations, with the balance provided by trust funds.
>
> 4. In addition, whenever legal actions are brought against the Smithsonian Institution, we are represented by lawyers from the United States Depart-

ment of Justice. To the extent that monetary judgments are awarded against the United States for conduct of the Smithsonian Institution, those judgments are paid from the United States Judgment Fund.

5. The workforce of the Smithsonian Institution is largely made up of federal employees. Indeed, as of September 16, 2003, the Smithsonian Institution employed 4293 federal employees, which comprise approximately 68% of the Smithsonian Institution's work force.

6. The Smithsonian Institution Press is an operating unit of the Smithsonian Institution and is fully-funded by the Smithsonian Institution. The Smithsonian Institution Press is not a separate and distinct legal entity independent of the Smithsonian Institution.

(Sworn Declaration of John E. Huerta dated September 16, 2003 ("Huerta Decl."), ¶¶ 2–6.)

The Smithsonian's memorandum of law noted that the Smithsonian had been created by Congress in order to comply with the terms of a bequest to the United States (*see* Smithsonian Memorandum of Law in Support of the Defendant's Motion To Dismiss ("Smithsonian Memorandum") at 2–3, citing 20 U.S.C. § 41 note), and stated that

all three branches of the federal government have a significant role in the operations of the Smithsonian Institution. Eight of the seventeen Regents of the Smithsonian Institution acquire their positions by virtue of holding high federal government office, and the remaining Regents are appointed by joint resolution of Congress. 20 U.S.C. § 42.

(Smithsonian Memorandum at 3–4). Although noting that no circuit court had considered whether the Smithsonian was within the term "United States" as used in 1498(b), the Smithsonian Memorandum cited one district court decision that had summarily answered that question in the affirmative, *see Brundin v. United States,* 1996 WL 22370, at \*7–\*8 (S.D.N.Y. Jan.19, 1996), and a number of circuit court opinions that had found the Smithsonian to be the "United States" or a federal agency for purposes of other federal statutes, *see* Part II.C. below. Pointing out that "[t]he United States, as sovereign, is immune from suit except to the extent that it has consented to be sued" (Smithsonian Memorandum at 8, citing *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)), the Smithsonian noted that the United States has, in § 1498(b), expressly waived its sovereign immunity from suit for copyright infringement only to the extent that such a suit may be brought in the Court of Claims. The Smithsonian argued that the district court thus lacked subject matter jurisdiction of the present action (*id.* at 8–9).

In opposition to the motion, O'Rourke did not dispute any of the factual assertions in the Huerta Declaration. Rather, he argued that § 1498(b) is inapplicable because the Smithsonian is not a corporation owned or controlled by the United States, or a contractor, subcontractor, person, firm, or corporation acting for the government, terms that are used in § 1498(b); and he cited *Dong v. Smithsonian Institution,* 125 F.3d 877, 883 (D.C.Cir.1997), *cert. denied,* 524 U.S. 922, 118 S.Ct. 2311, 141 L.Ed.2d 169 (1998), and *Cotton v. Heyman,* 63 F.3d 1115 (D.C.Cir. 1995), for the proposition that the Smithsonian is not a federal agency. (*See* O'Rourke Memorandum of Law in Opposition to the Defendant[s'] Motion To Dismiss the Complaint ("O'Rourke Memorandum"), at unnumbered pages 2–6.) O'Rourke pointed out that the Smithsonian was created as an independent establishment of the United States, citing 20 U.S.C.

§ 41, and that § 1498(b) does not mention establishments, or trust instrumentalities, of the United States. (*See* O'Rourke Memorandum at unnumbered page 3.)

In an opinion reported at 296 F.Supp.2d 434 (2003), the district court granted the Smithsonian's motion to dismiss. The court found O'Rourke's interpretation of § 1498(b) untenable because it "would effectively read out of the statute the phrase 'the United States.'" 296 F.Supp.2d at 435. Noting that the only question before the court was whether the Smithsonian was within § 1498(b)'s term "the United States" because "[d]efendants do not contend that they fall within any [other] category" mentioned in that section, 296 F.Supp.2d at 435 n. 1, the district court answered that question in the affirmative. It reasoned that

> the phrase "the United States" should be interpreted broadly for purposes of Section 1498(b). The language of the statute suggests Congress's intent to grant the Court of Federal Claims exclusive jurisdiction over all copyright claims in which the United States has a sufficiently strong interest, or in which the United States was involved in the alleged infringement.

296 F.Supp.2d at 435–36. The court noted that most of the Smithsonian's workforce is made up of federal employees, that in litigation the Smithsonian is represented by attorneys from the United States Department of Justice, and that money judgments against the Smithsonian are paid out of the federal fisc. *See id.* at 437. The court also noted that other courts had recognized the close relationship between the United States and the Smithsonian, including "substantial federal funding and the important supervisory role played by government officials," *id.* at 436–37 (internal quotation marks omitted), and had concluded that the Smithsonian was a federal

agency within the meaning of such statutes as the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, and the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 ("FTCA"). *See* 296 F.Supp.2d at 436–37. The district court concluded that the Smithsonian should be considered to be within the phrase "the United States" in § 1498(b) and that the Court of Claims thus had exclusive jurisdiction over O'Rourke's claim.

Accordingly, judgment was entered dismissing the action for lack of subject matter jurisdiction, and this appeal followed.

## II. DISCUSSION

On appeal, O'Rourke, who did not dispute the factual allegations in the Huerta Declaration, does not contend that there were any issues of fact to be tried with respect to jurisdiction. Rather, he contends principally that the Smithsonian should not be considered "the United States" within the meaning of § 1498(b) because (a) it is a "trust instrumentality" and trust instrumentalities are not mentioned in that section; (b) the Smithsonian, which describes itself as "independent of the government," *see Official Guide to the Smithsonian* at 26, has been held not to be a government agency for purposes of the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Privacy Act, 5 U.S.C. § 552a; and (c) in certain statutes, Congress has expressly included the Smithsonian, from which O'Rourke infers that it is not covered by statutes that do not expressly mention it. For the reasons that follow, we conclude that the district court correctly ruled that the Smithsonian is within the term "the United States" as used in § 1498(b).

### A. The Purpose of § 1498(b)

The Reports of the Judiciary Committees of both the Senate and the House of

Representatives on the bill that led to the enactment of § 1498(b) noted that " '[i]t has long been an established principle that the Federal Government should not appropriate private property without making just compensation to the owner thereof.' " S.Rep. No. 86–1877, at 2 (Aug. 22, 1960) ("Senate Report"), *reprinted in* 1960 U.S.C.C.A.N. 3444, 3445 (quoting H.R.Rep. No. 86–624 (July 1, 1960) ("House Report")). Thus,

> "[w]hen the Government deliberately publishes a copyrighted article without obtaining the prior consent of the copyright proprietor, the general assumption would be that the holder, pursuant to the principles of 'just compensation' under the fifth amendment of our Constitution, should be entitled to an action against the Government for infringement."

Senate Report at 3, *reprinted in* 1960 U.S.C.C.A.N. at 3445 (quoting House Report).

Prior to 1960, however, the United States had not waived its sovereign immunity from suits for copyright infringement, and the result was, "inequitabl[y]," that government employees—who could not claim sovereign immunity—were " 'personally liable for copyright infringement' " that the employees had " 'done for the benefit of the Government.' " *Id., reprinted in* 1960 U.S.C.C.A.N. at 3446 (quoting House Report (other internal quotation marks omitted)). Finding it " 'proper . . . that the Government should assume responsibility for such acts,' " *id., reprinted in* 1960 U.S.C.C.A.N. at 3446 (quoting House Report), Congress enacted § 1498(b) to provide a limited waiver of sovereign immunity, allowing the United States to be sued in the Court of Claims for copyright infringement "in those cases in which the infringement was made with the authorization or consent of the Govern-

ment." *Id.* at 2, *reprinted in* 1960 U.S.C.C.A.N. at 3445.

Neither § 1498(b) itself nor its legislative history expressly mentions the Smithsonian. As discussed below, however, the Smithsonian's creation, governance, and operations—including the facts that Congress appropriates funds expressly for the Smithsonian's preparation and publication of books and that judgments against the Smithsonian are paid from the United States Treasury—provide ample indicia that Congress intended § 1498(b)'s reference to "the United States" to encompass the Smithsonian.

### B. *The Establishment and Operation of the Smithsonian*

The Smithsonian has its origin in an 1829 bequest by the Englishman James Smithson, contingent on certain events that later came to pass, of his estate "to the United States of America." 9 Stat. 102, ch. 178 (Aug. 10, 1846) (the "1846 Act") (Preamble), *codified at* 20 U.S.C. § 41, note. The purpose of the bequest was the creation of "an establishment for the increase and diffusion of knowledge." *Id.; see generally* D. Currie, *The Smithsonian,* 70 U. Chi. L.Rev. 65, 65–66 (2003); http://www.si.edu/archives/documents/ smithsonwill.htm. In 1836, Congress authorized the President to pursue the bequest and to collect "all such sum or sums of money, or other funds, as may or shall be decreed or adjudged to the United States for, or on account of, said legacy." 5 Stat. 64, ch. 252, § 1 (July 1, 1836) ("1836 Act"). The 1836 Act provided that "the Treasurer of the United States is hereby authorized and required to keep safely all sums of money or other funds which may be received by him in virtue of the said bequest, and to account therefor separately from all other accounts of his office, and subject to such further disposal thereof as

may be hereafter provided by Congress." *Id.* § 2. The 1836 Act "pledged" "the faith of the United States" to the application of those funds and moneys toward the purposes described in the bequest. *Id.* § 3.

In the 1846 Act, Congress established the Smithsonian for the pursuit of those purposes, *i.e.*, the increase and dissemination of knowledge. *See* 9 Stat. at 102 (Preamble). Ensuring governmental oversight, the 1846 Act provided that the persons who would "constitute[] ... the 'Smithsonian Institution,'" *i.e.*, be its members, would include high-ranking government officials, *ex officio*, to wit, the President, Vice President, and Chief Justice of the United States, the Secretaries of State, the Treasury, War, and the Navy, the Postmaster–General, the Attorney–General, the Commissioner of the Patent Office, and the Mayor of the City of Washington. 1846 Act § 1, 9 Stat. at 102. The current codification similarly provides that those "constitut[ing]" the Smithsonian are "[t]he President, the Vice President, the Chief Justice, and the heads of executive departments." 20 U.S.C. § 41; *see generally* 5 U.S.C. § 101 (defining 14 "[e]xecutive departments," including the Departments of State, the Treasury, Commerce, and Education); 6 U.S.C. § 111 (making the Department of Homeland Security an executive department). Meetings of the members of the Smithsonian must be presided over by the President of the United States or, in his absence, the Vice President. *See* 20 U.S.C. § 45.

The affairs of the Smithsonian are conducted by its 17–member board of regents, *see id.* § 42(a), eight members of which constitute a quorum for the conduct of business, *see id.* § 44. Eight of the regents are United States officials: the Vice President and the Chief Justice of the United States, *see id.* § 42(a), three United States Senators appointed by the Presi-

dent of the Senate, *see id.* §§ 42(a), 43, and three Members of the United States House of Representatives appointed by the Speaker of the House, *see id.* §§ 42(a), 43. The remaining nine regents are "persons other than Members of Congress," *id.* § 42(a), who are appointed by joint resolution of Congress, *see id.* § 43. Regents are allowed reimbursement for their expenses in connection with attendance at meetings, but they receive no remuneration for their service as regents. *See id.* § 44 ("Each member of the board['s] ... service as regent shall be gratuitous."). The day-to-day operations of the Smithsonian are supervised by a salaried "Secretary" chosen by the board of regents. *Id.* §§ 46, 48. More than two-thirds of the Smithsonian's workforce of some 6,300 persons are employees of the federal government. (*See* Huerta Decl. ¶ 5.)

In furtherance of its purpose of increasing and disseminating knowledge, the Smithsonian's operations include the publication of books. The Smithsonian operates its own fully-funded publishing arm, the Smithsonian Institution Press, which is a part of the Smithsonian Institution, rather than a separate legal entity. (*See* Huerta Decl. ¶ 6.) Operation of the Press is designed to "ensure that publications are well written, of exceptional scholarly quality, and accessible to general readers." Smithsonian Institution Budget Request to Congress for Fiscal Year 2004, at 128, available at http://www.si.edu/about/budget/2004/ index.html ("Smithsonian 2004 Budget Request to Congress"). Congress has authorized "appropriations for," *inter alia*, the Smithsonian's "preparation of manuscripts ... for publications." 20 U.S.C. § 53a.

In light of (a) the United States's pledge of faith in the 1836 Act to create the Smithsonian with a view to increasing the dissemination of knowledge, and (b) Con-

gress's appropriations to fund the Smithsonian's preparation and publication of manuscripts, we regard the Smithsonian's publishing activity as both authorized by the government and benefiting the government. Given Congress's enactment of § 1498(b) for the purpose of allowing copyright suits exclusively against "the United States" with respect to alleged infringements by works published with the authorization or consent of the Government or for the benefit of the Government, the inference is strong that Congress intended § 1498(b) to include the Smithsonian within the term "the United States."

That inference is further supported by the fact that most of the Smithsonian's operational expenses, and the judgments against it, are funded from the United States Treasury. The moneys bequeathed to the United States by Smithson, totaling $515,169, were placed in the United States Treasury. *See* 1846 Act § 2, 9 Stat. at 102–03. Smithsonian operations were to be financed not from principal but from income on the bequeathed funds. *See id.* Currently, some two-thirds of the Smithsonian's annual operating budget is derived from federal appropriations. (*See* Huerta Decl. ¶ 3; *cf.* Smithsonian 2004 Budget Request to Congress, at 3, 125–26 (requesting more than $566 million in federal appropriations, including more than $9 million for "outreach" operations, which include operation of the Smithsonian Institute Press)). When money is required for payment of the Smithsonian's debts, the board of regents requests payment from the United States Treasury. *See* 20 U.S.C. § 57.

Whenever the Smithsonian is sued, representation is provided by government attorneys from the Department of Justice. (*See* Huerta Decl. ¶ 4.) If a money judgment is entered against the Smithsonian, the judgment is paid from the United States Judgment Fund. (*See id.*) The Judgment Fund is created by Congress's "appropriat[ion]" of "[n]ecessary amounts . . . to pay final judgments" (not otherwise provided for) entered under, *inter alia*, 28 U.S.C. § 2414 (judgments "against the United States" in the district courts), or 28 U.S.C. § 2517 (judgments "against the United States" in the Court of Claims). 31 U.S.C. § 1304(a)(3). *See also* http://fms.treas.gov/judgefund/background.html ("As a general proposition, the Judgment Fund is available for payment of money judgments and awards against the United States . . . ." The "permanent, indefinite" "appropriation is found at 31 U.S.C. 1304."); http://fms.treas.gov/judgefund/reports.asp (showing that between October 2002 and December 2004, judgments against the Smithsonian totaling nearly $18 million were paid from the United States Judgment Fund).

In sum, Congress accepted the Smithson bequest to the United States and promised to establish the Smithsonian for purposes of the increase and dissemination of knowledge; the Smithsonian thus engages in the publication of scholarly works; and Congress authorizes appropriations for most of the Smithsonian's operations, including its publishing operation. The persons responsible for the Smithsonian's operations are either United States officials of the highest rank, *ex officio,* or persons who are appointed by joint resolution of Congress; and most members of the Smithsonian's workforce are employees of the United States government. In litigation, the Smithsonian is represented by government attorneys; and judgments against the Smithsonian are paid from the United States Judgment Fund, with funds appropriated by Congress. In light of all these factors, we conclude that Congress intended "the United States" in § 1498(b) to encompass the Smithsonian.

## C. Treatment of the Smithsonian Under Other Statutes

O'Rourke's reliance on *Dong v. Smithsonian Institution*, 125 F.3d 877, and *Cotton v. Heyman*, 63 F.3d 1115, for the contrary proposition is misplaced. *Dong v. Smithsonian Institution*, involved a claim under the Privacy Act, 5 U.S.C. § 552a. That statute, incorporating the definition of "agency" used in FOIA, defined "agency" as an "executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or an[ ] independent regulatory agency," 5 U.S.C. § 552(f) (FOIA), *see* 5 U.S.C. 552a(a)(1); the Privacy Act was also understood to encompass any "authority of the Government of the United States," 5 U.S.C. § 551(1), *i.e.*, the definition of agency in the Administrative Procedure Act ("APA"), as that APA definition was incorporated into the FOIA definition, *see Dong v. Smithsonian Institution*, 125 F.3d at 878–79; *Cotton v. Heyman*, 63 F.3d at 1121. In *Dong*, the District of Columbia Circuit observed that the only § 552(f) categories into which the Smithsonian could possibly fit were "establishment in the executive branch" and "Government controlled corporation." Neither was applicable. Given, *inter alia*, that all but two members of the Smithsonian's board of regents are either members of Congress or appointed by joint resolution of Congress, and there being no indication that the Smithsonian's Secretary reports to the President or that the Smithsonian engages in any typically executive activity other than with respect to its own buildings, the court concluded that the Smithsonian cannot be considered an establishment in the executive branch. *See* 125 F.3d at 879. The possibility that the Smithsonian might be considered a "Government controlled corporation" within the meaning of § 552(f) was rejected for the same reason, because the court interpreted § 552(f)'s phrase "or *other* establishment in the executive branch" (emphasis added) as revealing that the list of entities preceding that phrase referred only to corporations in the executive branch. *See* 125 F.3d at 879–80. The *Dong* court also found that the Smithsonian should not be considered an "authority of the Government of the United States" within the meaning of the APA, 5 U.S.C. § 551(1), because, despite its substantial ties to the federal government, the Smithsonian does not have the power to exercise "substantial independent authority," *id.* at 881, "to take final and binding action affecting the rights and obligations of individuals, particularly by the characteristic procedures of rule-making and adjudication," *id.* (internal quotation marks omitted).

In *Cotton v. Heyman*, the District of Columbia Circuit was faced with a plaintiff's motion for attorneys' fees against the Smithsonian in an action brought under FOIA. The district court had ruled that the Smithsonian was in fact an agency subject to FOIA; and the Smithsonian had then proceeded to deliver two of the demanded documents to the plaintiff, rather than attempting an immediate appeal of the district court's ruling. The court of appeals ruled that, as a result, the Smithsonian was estopped from challenging the ruling that it was an agency subject to FOIA. *See* 63 F.3d at 1118–19. However, that court concluded that the Smithsonian was not estopped from opposing an award of attorneys' fees on the ground that its position that it was not an agency subject to FOIA was "reasonable[ ]," and the court concluded that that position was reasonable in light of the definitions of "agency" found in FOIA and the APA (which we have discussed above). *See id.* at 1119–21.

In light of the definition of "agency" in FOIA and the Privacy Act, the decisions in *Dong* and *Cotton,* analyzing that particular definition, provide little assistance in interpreting § 1498(b)'s use of the term "the United States."

With respect to claims under other statutes, courts have similarly been constrained by the particular definitions before them. In employment discrimination actions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), for example, the Smithsonian was considered to be part of the federal government but was held not encompassed by Congress's 1972 limited waiver of sovereign immunity, which extended only to claims against certain *"executive* agencies as defined in section 105 of title 5," 42 U.S.C. § 2000e–16(a) (1994) (emphasis added), or against other listed entities that did not include the Smithsonian, *see id. See generally Misra v. Smithsonian Astrophysical Observatory,* 248 F.3d 37, 39–40 & n. 1 (1st Cir.2001). The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"), as amended in 1978, had the same scope, as it incorporated § 2000e–16(a) in describing the governmental entities against which claims could be asserted under that Act, *see* 29 U.S.C. § 794a. Thus, in addressing Rehabilitation Act claims in *Rivera v. Heyman,* 982 F.Supp. 932 (S.D.N.Y.1997) (*"Rivera I "*), *affirmed in part, reversed in part in light of 1998 amendment to statute,* 157 F.3d 101 (2d Cir.1998) (*"Rivera II "*), the district court ruled, for reasons paralleling those discussed in *Dong,* that the Smithsonian could not be considered an "executive" agency, and hence could not be sued under the Rehabilitation Act. *See Rivera I,* 982 F.Supp. at 938.

In 1998, the Smithsonian became amenable to suit under employment discrimination laws such as Title VII and the Reha-bilitation Act by virtue of the passage of the Workforce Investment Act of 1998, Pub.L. No. 105–220, 112 Stat. 936, § 341 (1998) ("Workforce Act"). *See, e.g., Rivera II,* 157 F.3d at 103; *Misra v. Smithsonian Astrophysical Observatory,* 248 F.3d at 39–40. Amending 42 U.S.C. § 2000e–16, entitled "Employment by Federal Government," the Workforce Act waived sovereign immunity with respect to actions against the Smithsonian under Title VII and the Rehabilitation Act by adding "the Smithsonian Institution" to the list of entities in § 2000e–16(a) that are prohibited from engaging in the forbidden discrimination, *see* Pub.L. No. 105–220, 112 Stat. 936, § 341(a). *See also id.* § 341(b) (making the Smithsonian amenable to suit under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), by adding "the Smithsonian Institution" to the entities listed in subsection (a) of 29 U.S.C. § 633a, which prohibits "[ ]discrimination on account of age in Federal Government employment").

The fact that the Smithsonian was not considered to be covered by 42 U.S.C. § 2000e–16(a) and 29 U.S.C. § 633a(a) prior to 1998 because it was not mentioned in those sections does not reflect an affirmative conclusion by the courts that Congress meant not to include it, but rather reflects the courts' application of the well established principle that waivers of sovereign immunity are to be construed strictly and narrowly in favor of the sovereign, *see generally Lane v. Pena,* 518 U.S. 187, 195, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996).

In any event, these cases are not particularly helpful here, as they involved definitions that do not parallel the term "the United States" in § 1498(b). Common to the cases deciding whether the Smithsonian was immune from suit, however, was the premise that the Smithsonian is properly considered part of the United States

Government, a premise seemingly endorsed by Congress's placement of the Smithsonian in the Title VII and ADEA sections governing employment by the "Federal Government."

That premise is likewise present in cases applying the FTCA, 28 U.S.C. §§ 1346(b), 2671–2680, to tort claims against the Smithsonian. The jurisdictional provision of the FTCA, like § 1498(b), refers to claims "against the United States," 28 U.S.C. § 1346(b)(1), and the courts that have considered the issue have uniformly treated the Smithsonian as covered by the FTCA, *see, e.g., Johnson v. Smithsonian Institution,* 189 F.3d 180, 189 (2d Cir.1999); *Genson v. Ripley,* 681 F.2d 1240, 1241–42 (9th Cir.1982); *Expeditions Unlimited Aquatic Enterprises. Inc. v. Smithsonian Institution,* 566 F.2d 289, 296 (D.C.Cir.1977) (panel opinion reprinted as appendix to opinion en banc), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978); *Marley v. Ibelli,* 203 F.Supp.2d 302, 308–09 (S.D.N.Y.2001); *Brundin v. United States,* 1996 WL 22370, at *8. In each of these cases, the focus was not principally on the initial jurisdictional provision in § 1346(b)(1) but rather was on the substantive scope of the FTCA's waiver, *see, e.g., Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 566 F.2d at 296–97 (§ 2680(h)'s exclusion of claims for libel), or on the procedural requirements set forth in other sections of the FTCA that limited the government's waiver of sovereign immunity, such as 28 U.S.C. § 2679(d)'s restrictions on the removal of actions from state court, *see Marley v. Ibelli,* 203 F.Supp.2d at 308–09, or § 2675's requirement that administrative remedies be exhausted, *see Genson v. Ripley,* 681 F.2d 1240, 1241–42 (9th Cir.1982), and be exhausted within the time provided for FTCA claims in 28 U.S.C. § 2401(b), *see, e.g., id.; Johnson v. Smithsonian Institution,* 189 F.3d at 189. In *Johnson,* for example, this Court considered whether the FTCA claimant had timely exhausted his administrative remedies by presenting his claim to the appropriate federal agency. We noted that

> [t]he Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.,* which waives the United States' sovereign immunity against certain claims sounding in tort, *governs the plaintiff's claims against the Smithsonian.* . . . In order to state a claim under the FTCA, the person attempting to assert it must comply with several strictly construed prerequisites[, including] . . . "present[ation] in writing to *the appropriate Federal agency* within two years after such claim accrues . . . ."

189 F.3d at 189 (quoting 28 U.S.C. § 2401(b)) (emphases ours). We found the Smithsonian to be a federal agency because it falls within the FTCA definition of that term, which "includes . . . independent establishments of the United States," 28 U.S.C. § 2671. *See* 189 F.3d at 189.

We note that in none of these cases would the FTCA provisions in, *e.g.,* § 2675 or § 2680 have been triggered if the Smithsonian were not properly considered to be "the United States" within the meaning of § 1346(b). Even so, we place little, if any, reliance on cases decided under other statutes. We base our conclusion that § 1498(b) governs suits against the Smithsonian for copyright infringement on the considerations discussed in Parts II.A. and B. above.

## CONCLUSION

We have considered all of O'Rourke's arguments on this appeal and have found them to be without merit. We conclude that the Smithsonian is within the term "the United States" in 28 U.S.C. § 1498(b). That section waives sovereign immunity

with respect to copyright infringement claims brought against the United States, but only to the extent that such claims are brought in the United States Court of Federal Claims. Accordingly, we affirm the judgment of the district court, dismissing the present action for lack of subject matter jurisdiction.